UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.uscourts.flmb.gov

In re:                                          Chapter 11; Subchapter V

THE HALL AT THE YARD LLC,                       Case No. 8:23-bk-00250

         Debtor.                                ***Emergency Hearing Requested***

_____/

### DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO OBTAIN POSTPETITION FINANCING AND GRANT SENIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 364(c) AND (d) AND F.R.B.P. 4001

---

**STATEMENT OF RELIEF REQUESTED**

The Debtor seeks authority in this Motion to borrow money, pursuant to a revolving line of credit, in order to fund payroll, other operating expenses, and costs of administration in this Chapter 11 case in accordance with a proposed budget which will be filed with the Court in advance of the hearing on this Motion. The liens proposed to be granted would be senior liens on all property of the Debtor. This Motion seeks to have the liens granted pursuant to any financing approved by this Court to be deemed perfected without the need for any further filings. The principal terms of the revolving line of credit are set forth in Paragraph 19 of this Motion.

---

## Introduction

THE HALL AT THE YARD LLC, as debtor and debtor in possession (the "**Debtor**"), by and through its undersigned counsel, hereby files its Debtor's Emergency Motion for Authority to Obtain Postpetition Financing and Grant Senior Liens and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001 (the "**Motion**"), and respectfully requests that this Court enter an order, inter alia:

(A)    authorizing the Debtor to borrow up to an aggregate principal amount of $100,000.00 of senior secured and superpriority basis financing (the "**DIP Facility**")[1] from M Funding I, LLC or a Virginia limited liability company (the "**DIP Lender**"), substantially in accordance with the terms of this Motion;

(B)    authorizing the Debtor to execute definitive debtor in possession loan documents and such other necessary documents, instruments and agreements (collectively, the "**DIP Loan Documents**"), which shall be consistent with the terms of this Motion and the interim and final orders of the Court granting this Motion (collectively, the "**Financing Orders**"), and perform all such other and further acts as may be necessary or appropriate in connection therewith;

(C)    authorizing the Debtor, under Section 364 of the Bankruptcy Code, to obtain postpetition financing and incur postpetition indebtedness under the DIP Facility, which financing and indebtedness due and owing by the Debtor to the DIP Lender shall be secured by liens on and security interests in all property of the Debtor pursuant to Sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code, which liens and security interests shall be senior to all prepetition and postpetition liens on property of the Debtor;

(D)    authorizing the Debtor to grant to the DIP Lender, in accordance with Section 364(c)(1) of the Bankruptcy Code, a superpriority administrative expense claim having priority over any and all administrative expenses of and priority claims against the Debtor, subject only to the Carve-Out Expenses (as defined below);

---

[1] At the initial hearing on this Motion, the Debtor will seek to borrow $58,000.00 or such other amount as is necessary to avoid immediate and irreparable harm on an interim basis pending entry of a final order on this Motion.

(E)     modifying and, to the extent necessary, lifting the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to permit the DIP Lender and the Debtor to implement the terms of this Motion, the DIP Loan Documents and the Financing Orders;

(F)     scheduling a final hearing (the "**Final Hearing**") pursuant to Bankruptcy Rule 4001 with respect to the relief requested herein for this Court to consider the entry of a final order granting this Motion (the "**Final Financing Order**"); and

(G)     granting the Debtor such other and further relief as the Court deems necessary, appropriate, equitable, proper, and consistent with the terms of this Motion.

## **Jurisdiction**

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein include Sections 105, 361, 362, 363, 364 and 545 of Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 4001(c) and (d) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2018-1(f)(2) of the Local Rules of the Court (the "**Local Rules**").

## **Background**

2.     On January 24, 2023 (the "**Petition Date**"), the Debtor filed a Voluntary Petition for Relief under the Bankruptcy Code and made an election to proceed under Subchapter V pursuant to the Small Business Reorganization Act of 2019, as amended.

3.     Since the Petition Date, the Debtor has continued to operate its business and manage its properties as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No previous application for the relief sought in this Motion has been made by the Debtor to this Court or any other court.

5.      The Debtor operates a full-service food hall through subleases or licenses with various vendors for the operation of restaurants at 1412 Alden Road in Orlando, Florida (the "**Premises**"), which space is leased by the Debtor from Ivanhoe Place Propco, LLC (the "**Landlord**").

6.      For a more detailed discussion of the Debtor's business and the reasons for the Chapter 11 filing, please see the Debtor's Chapter 11 Case Management Summary filed in this case.

### Prepetition Secured and Unsecured Claims

7.      The Debtor's secured obligations are with the following parties: (a) Newtek Small Business Finance, LLC ("**Newtek**"); (b) the Landlord; (c) the merchant cash advance ("**MCA**") lenders identified in paragraph 10 below; and (d) Kabbage, Inc. ("**Kabbage**").

8.      The Debtor believes that Newtek asserts a secured claim on all of the Debtor's assets with respect to an approximately $4.2 million loan to the Debtor guaranteed by the U.S. Small Business Administration made on or about October 2, 2020, as amended.

9.      The Debtor believes that the Landlord asserts a secured claim on all of the Debtor's assets located on the Premises, pursuant to a UCC-1 Financing Statement filed by the Landlord with the Florida Secured Transaction Registry on February 8, 2019.

10.      In addition, the following MCA lenders may assert liens on and security interests in the Debtor's assets:

4

| Creditor | Approximate Balance as of Petition Date |
|---|---|
| The Avanza Group LLC | $135,000.00 |
| Cobalt Funding Solutions | 150,000.00 |
| Delta Bridge Funding, LLC, servicer for CloudFund | 181,055.00 |
| Green Capital Funding, LLC | 44,000.00 |
| G and G Funding Group LLC | Undetermined |
| Premium Merchant Funding 26, LLC | 50,000.00 |
| Reef Funding Group | 44,000.00 |
| Vivian Capital Group, LLC | 150,000.00 |
| World Global Fund | 50,000.00 |
| Zahav Asset Management, LLC | 97,000.00 |

11.     Kabbage is owed approximately $359,000.00 based on a PPP loan made to the Debtor.

12.     In addition, certain equipment vendors may claim secured status with respect to equipment provided by such vendors to the Debtor and located on the Premises.

13.     As of the Petition Date, the books and records of the Debtor reflected unsecured claims of approximately $230,000.00.

**Proposed Use of Funds from DIP Facility**

14.     Prior to the hearing on this Motion, the Debtor will file a proposed budget with the Court (the "**Budget**").  As will be set forth in the Budget, the Debtor will need to borrow funds under the DIP Facility for, among other things, the following items:

    (a)     operational costs, including payroll, rent, and utilities;

    (b)     purchase of inventory and supplies required for its business; and

    (c)     administrative costs for this Chapter 11 case, including legal and other professional fees.

15.     The proposed DIP Facility will enable the Debtor to pay ongoing operating expenses and take the required actions set forth above which are necessary to maintain and improve the value of the Debtor's ongoing concern and its assets.  The Debtor cannot take the actions

described above without the DIP Facility.  If the Debtor does not take the actions described above, the value of its ongoing concern and its assets will not be maintained and will diminish substantially.

### Terms of the DIP Facility

16.     The Debtor and the DIP Lender acknowledge and agree that the Debtor is in need of financing in order to sustain its business operations and, in connection therewith, the DIP Lender has agreed to provide a revolving credit facility to the Debtor in the amount of up to $100,000.00 pursuant to the DIP Loan Documents and the Financing Orders.

17.     The DIP Lender is M Funding I, LLC or a Virginia limited liability company.

18.     Prior to the Petition Date, the Debtor conducted arm's length, good faith negotiations with the DIP Lender regarding debtor-in-possession financing.  Exercising sound business judgment, the Debtor determined that the proposal for debtor-in-possession financing advanced by the DIP Lender was the most favorable under the circumstances, could be documented and accessed quickly, and adequately addressed the Debtor's reasonably foreseeable liquidity needs while maximizing the value of the Debtor's assets and estate.  Following negotiations with the DIP Lender, the Debtor was able to secure a commitment for the DIP Facility.

19.     The principal features of the DIP Facility are as follows:

(a)     <u>Principal Amount</u>.  The DIP Facility will be in the maximum principal amount of up to $100,000.00.

(b)     <u>Closing</u>.  The closing (the "**Closing**") of the DIP Facility will occur on or about the date on which the interim order of the Court granting this Motion, substantially in the form attached as **<u>Exhibit A</u>** to this Motion (the "**Interim Financing Order**"), has been entered on the docket of this case.  It is anticipated that the Closing will occur no later than three (3) days after the Petition Date (the "**Closing Date**").  At the Closing, the Debtor will execute and deliver the DIP Loan Documents.

(c) <u>Collateral</u>.  The DIP Facility will be secured by all assets of the Debtor (the "**Collateral**").

(d) <u>Security and Priority</u>.  The DIP Facility will be secured by a continuing first priority lien and security interest (subject only to the Carve-Out Expenses), in accordance with Section 364(d)(1) of the Bankruptcy Code, in the Collateral, and the liens granted to the DIP Lender will be senior to all prepetition and postpetition liens of all parties and creditors in the assets of the Debtor.

(e) <u>Superpriority Administrative Expense Claim</u>.  Subject to the Carve-Out Expenses, the obligations of the Debtor arising under the DIP Loan Documents after the Closing Date (the "**Obligations**") shall constitute, in accordance with Section 364(c)(1) of the Bankruptcy Code, a superpriority administrative claim having priority over any and all administrative expenses now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code.  The DIP Lender shall have a superpriority administrative expense claim against the Debtor's estate pursuant to Section 364(c)(1) of the Bankruptcy Code for the Obligations, which shall be prior, senior and superior to any other claim against the Debtor, including any other superpriority administrative expense claim of any kind or nature, subject to the Carve-Out Expenses and except as provided in the Financing Orders.

(f) <u>Advances under the DIP Facility</u>.  Immediately upon the entry by the Court of the Interim Financing Order, the DIP Lender shall make an initial advance ("**Advance**") to the Debtor in an amount equal to (i) the amount set forth in the Budget to be advanced through the date of the Final Hearing, or (ii) such other amount as authorized by the Court in the Interim Financing Order, in each such case not to exceed the amount of $58,000.00.  Following the entry by the Court of the Final Financing Order, upon delivery of a notice of borrowing by the Debtor, the DIP Lender shall make additional Advances to the Debtor in accordance with the Budget; provided that, the aggregate amount of all Advances to be made under the DIP Facility by the DIP Lender shall not exceed $100,000.00.

(g) <u>Interest Rate</u>.  The principal amount of the Advances shall bear interest at the rate of eighteen percent (18%) per annum, compounded monthly, and shall be calculated based on a year of 360 days for the actual number of days elapsed.  Upon and after the occurrence of an Event of Default (as defined in the DIP Loan Documents), and during the continuation thereof, the Obligations

shall bear interest at the rate of twenty-four percent (24%) per annum, compounded monthly.

(h)  Use of Proceeds.  The Debtor shall use the proceeds of Advances for the purpose of funding certain costs and expenses of the Debtor in accordance with the Budget (plus or minus ten percent (10%) per line item).

(j)  Prepayment.  The Debtor may prepay (in part or in full) the DIP Facility at any time without penalty.

(k)  Maturity Date: Payment of Obligations.  Advances borrowed under the DIP Loan Documents will be paid in full in cash and the DIP Facility will terminate upon the earliest to occur of the following (the "**Maturity Date**"): (i) the entry of an order confirming the plan of reorganization of the Debtor, (ii) at the option of the DIP Lender, at any time on or after an Event of Default, or (iii) August 1, 2023.

(m)  Events of Default.  The Events of Default with respect to the DIP Facility will be set forth in the DIP Loan Documents.

(n)  CRO.  The Debtor has agreed to consult with the DIP Lender regarding the engagement of a chief restructuring officer acceptable to the DIP Lender during this case.

The description of the DIP Facility contained above in this Motion is intended as a summary only and is qualified in its entirety by reference to the DIP Loan Documents and the Financing Orders, and to the extent there is any inconsistency between the language of the DIP Loan Documents and the Financing Orders and the description thereof set forth in this Motion, the DIP Loan Documents and the Financing Orders shall control any such inconsistency.

## **Relief Requested and Ground for Relief**

20.  The Debtor submits that entry into the DIP Loan Documents is in the best interests of the Debtor, its estate and its creditors in that it provides the Debtor with assurance that the Debtor can continue to advance its business activities.

21.  The Debtor requests authority, pursuant to Sections 364(c)(1), 364(c)(2) and 364(d)(1) of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014, to obtain postpetition

loans, advances and other financial accommodations from the DIP Lender in an amount of up to $100,000.00, including up to $58,000.00, on an interim basis or such other amount as is necessary to avoid immediate and irreparable harm, secured by a security interest in and lien on all assets and properties of the Debtor which will be senior to any existing prepetition and postpetition liens. The DIP Lender shall not be granted a lien on any claim or cause of action arising under Sections 544, 545, 547, 548, 549, or 553(b) of the Bankruptcy Code.

22.     The Debtor further requests authority to enter into the DIP Loan Documents with the DIP Lender.

23.     As additional assurance that the DIP Facility will be repaid, the DIP Lender will be granted and allowed a superpriority administrative expense claim in accordance with Section 364(c)(1) of the Bankruptcy Code having priority and right of payment over any and all other obligations, liabilities and indebtedness of the Debtor, now in existence or hereafter incurred by the Debtor, and over any and all administrative expenses or priority claims against the Debtor now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code; provided, however, that such administrative expense claim shall not have priority over and shall be subject to the payment of (a) any unpaid fees due and payable pursuant to 28 U.S.C. § 1930 (including, without limitation, fees under 28 U.S.C. § 1930(a)(6)), (b) any unpaid fees due and payable to the Clerk of the Court, (c) the actual fees and expenses incurred by the Debtor's bankruptcy counsel, Stichter, Riedel, Blain & Postler, P.A. ("**SRBP**"), for the period prior to the occurrence of the Maturity Date (for which written notice has been provided by the DIP Lender to the Debtor and its counsel), provided such fees and expenses are allowed by the Court under

Sections 330 and 331 of the Bankruptcy Code, and (d) following the occurrence of the Maturity

Date (which occurrence is not waived by the DIP Lender and for which the DIP Lender has

provided written notice to the Debtor and its counsel), allowed professional fees and disbursements

incurred after notice of the Maturity Date by SRBP in an aggregate amount not to exceed

$30,000.00 provided that such amounts are (i) allowed by the Court, and (ii) not otherwise paid

from any unused portion of any retainers or unused amounts for payments to SRBP set forth in the

Budget (the items in subparagraphs (a)-(d), collectively, the "**Carve-Out Expenses**").

24.     The Debtor believes that the financing described herein is in its best interest and

the best interest of its creditors and its estate.  The Debtor's access to the financing described herein

will maximize its ability to continue its business without interruption, and will provide the Debtor's

key constituents, including vendors, suppliers, employees, and customers, with the confidence that

the Debtor will have sufficient cash to allow such parties to continue to deal with the Debtor in the

ordinary course of business.  To the extent additional liquidity is required to operate its business,

the Debtor must obtain the ability to utilize the DIP Facility.

25.     The Debtor is presently unable to obtain, in the ordinary course of business or

otherwise:

    (a)     pursuant to Section 364(a) or 364(b) of the Bankruptcy Code, unsecured credit (including, without limitation, unsecured trade credit) allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense;

    (b)     pursuant to Section 364(c)(1) of the Bankruptcy Code, unsecured credit (including, without limitation, unsecured trade credit) with priority over any or all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code;

    (c)     pursuant to Section 364(c)(2) of the Bankruptcy Code, credit secured by a lien on property of the estate that is not otherwise subject to a lien;

(d)      pursuant to Section 364(c)(3) of the Bankruptcy Code, credit secured by a junior lien on property of the estate that is subject to a lien; or

(e)      credit on any basis other than that described in the Credit Agreement.

26.      After considering all of the alternatives, the Debtor has concluded, in the exercise of its business judgment, that the financing to be provided under the terms of the DIP Facility and this Motion represents the best financing available to the Debtor and is in the best interests of the Debtor, its creditors and other parties in interest.

27.      Good cause has been shown for the entry of an order granting this Motion pursuant to Bankruptcy Rule 4001(c)(2).  In particular, entry of such order is in the best interest of the Debtor and its business and its ability to continue to operate as a going concern.

28.      As set forth in this Motion, the DIP Lender and the Debtor have negotiated the terms and conditions of the DIP Facility in good faith and at arm's-length, and the terms and conditions of the DIP Loan Documents will be fair and reasonable and supported by reasonably equivalent value.  The Debtor requests that this Court find that any credit extended by the DIP Lender pursuant to the terms of the DIP Loan Documents will have been extended in "good faith" (as that term is used in Section 364(e) of the Bankruptcy Code).

**<u>Interim Approval and Irreparable Harm</u>**

29.      Bankruptcy Rule 4001 provides that a final hearing on a motion to obtain postpetition financing may not be commenced earlier than fourteen (14) days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary, expedited hearing on the motion and to authorize the proposed debtor in possession financing to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

11

30.     The Debtor has an urgent and immediate need for cash to continue to operate. Absent access to the DIP Facility, the Debtor will have no ability to meet its ongoing obligations to suppliers, vendors, employees and other creditors.  If the Debtor is unable to pay its ongoing obligations, it will not be able to operate.  In contrast, the Debtor's access to the DIP Facility will ensure that the going concern value of its assets is preserved, a value substantially greater than the value which would be realized if the Debtor were forced to cease operations immediately due to a lack of liquidity.  Accordingly, the Debtor requests that the Court conduct a preliminary hearing on this Motion and authorize the Debtor, from the entry of the Interim Financing Order until the Final Hearing, to obtain credit pursuant to the DIP Facility to the extent necessary to avoid immediate and irreparable harm to its estate.

31.     The Debtor further requests that the Court schedule the Final Hearing and authorize the Debtor to mail a copy of the Interim Financing Order when entered by the Court, which fixes the time and date of the Final Hearing and the deadline for the filing of objections to this Motion and the entry of the Final Financing Order.  The Debtor requests that the Court find that such notice of the Final Hearing is sufficient notice under Bankruptcy Rules 2002 and 4001.

**<u>Notice</u>**

32.     No trustee or examiner has been appointed in this case, and no official committees of unsecured creditors or equity security holders have yet been appointed pursuant to Section 1102 of the Bankruptcy Code.  Notice of this Motion has been given by (i) the Court's CM/ECF Transmission to the Office of the United States Trustee for the Middle District of Florida, and (ii) United States first class mail to the Debtor, all known secured creditors of the Debtor, all parties listed on the Local Rule 1007-2 Parties in Interest List for this case (including the twenty (20) largest unsecured creditors of the Debtor), and certain other parties.  The Debtor submits that,

4859-8311-4060, v. 1

given the nature of the relief requested herein, no other or further notice need be given. Accordingly, the Debtor requests that the Court enter an order finding that such notice of this Motion is adequate and sufficient and complies with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court.  The Debtor submits that, given the emergency nature of the relief requested herein, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that this Court enter an order granting this Motion, authorizing the Debtor to obtain financing and grant liens pursuant to 11 U.S.C. §§ 364(c) and (d) in accordance with the terms and conditions of the DIP Loan Documents, authorizing the Debtor's borrowing of up to $58,000.00 pursuant to the terms of the Interim Financing Order and pending the Final Hearing pursuant to Bankruptcy Rule 4001, and granting such other and further relief as may be just and proper.

/s/ Edward J. Peterson
Edward J. Peterson  (FBN 0014612)
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida   33602
Telephone: (813) 229-0144
Email:  epeterson@srbp.com
Attorneys for the Debtor

13

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the *Debtor's Emergency Motion for Authority to Obtain Postpetition Financing and Grant Senior Liens and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001* with attached <u>Exhibit A</u> has been furnished on this 24th day of January, 2023, by either the Court's CM/ECF System or by U.S. mail to all creditors on the Court's mailing matrix and by either U.S. mail, email, or facsimile to:

Newtek Small Business Finance, LLC
c/o Eliot Kirshnitz, Sr. Counsel
1981 Marcus Ave., #130
New Hyde Park NY 11042
ekirshnitz@newtekone.com

Newtek Small Business Finance, LLC
c/o Corporation Service Company
1201 Hays St.
Tallahassee, FL  32301-2525

Ivanhoe Place Propco, LLC
Attn:  Chaney Gordy, Jr., Manager
101 S. Eola Dr., #1215
Orlando FL 32801

CT Corporation System, as Repr.
330 N. Brand Blvd., #700
Attn: SPRS
Glendale, CA 91203

Delta Bridge Funding, LLC, as servicer
for CloudFund, LLC
2875 NE 191st St., #500
Miami, FL 33180
Email:  legal@deltabridgefunding.com

Kabbage, Inc.
Attn:  Kim Withrow, Esq.
925B Peachtree St. NE, #383
Atlanta GA 30309
bankruptcy@kservicecorp.com

4859-8311-4060, v. 1

U.S. Small Business Administration
7825 Baymeadows Way, Suite 100-B
Jacksonville, FL 32256
Fax:  1.904.443.1916

Attorney General of the United States
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0001

United States Attorney
Attn:  Civil Process Clerk
400 N. Tampa St., #3200
Tampa FL 33602

The Avanza Group, LLC
14 Knorr Ave.
Seymour CT 06488

The Avanza Group, LLC
Attn:  Frank Scarso, CEO
47 Craig Ave.
Staten Island, NY  10307
Telephone:  212.457.1573

Cobalt Funding Solutions
99 Wall St., #3618
New York NY 10005
support@cobaltfunding.com

G and G Funding Group, LLC
Attn:  Anthony Gandolfo, Managing Partner
57 W. 57th St., Floor 4
New York NY 10019

G and G Funding Group, LLC
25-03 Borden Ave.
Long Island City, NY  11101
Green Capital Funding, LLC

Attn:  Sal Hodzic, CEO
53 Mason St.
Greenwich CT 06830
Fax:  203.518.4944

Premium Merchant Funding 26, LLC
Attn:  Adela Bejko, Fund Manager

4859-8311-4060, v. 1

55 Water St., Floor 50
New York NY 10004
Fax:  646.780.8724

Reef Funding Group
c/o Novac Equities, LLC
Attn:  Jake Damelio, Registered Agent
25 SW 9th St., #202
Miami FL 33130

Vivian Capital Group, LLC
Attn:  Moe Shor, Managing Partner
486 Market St.
Newark NJ 07105
info@viviancapital.com

World Global Fund
20807 Biscayne Blvd., #203
Miami FL 33180

Zahav Asset Management, LLC
234 Cedarhurst Ave., Apt 21B
Cedarhurst, NY 11516
newdeals@zahavassetmgmt.com
ashley@boostcapitalgroup.com

*/s/ Edward J. Peterson*
Edward J. Peterson

4859-8311-4060, v. 1

Label Matrix for local noticing
113A-8
Case 8:23-bk-00250
Middle District of Florida
Tampa
Tue Jan 24 12:59:32 EST 2023

The Hall at the Yard, LLC
13518 Westshire Dr.
Tampa, FL 33618-2500

A-Head for Profits FL
240 great Circle Rd., #344
Nashville, TN 37228-1721

Attorney General of the United States
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0001

Avanza Group, LLC
14 Knorr Ave.
Seymour, CT 06483-2645

Avanza Group, LLC
47 Craig Ave.
Staten Island, NY 10307-1328

BBK Janitorial Services, LLC
Guillermo Pesant, Esq.
1313 Ponce de Leon Blvd., #301
Miami, FL 33134-3343

CB Hospitality Ventures, LLC
11510 Joshuas Bend Dr.
Tampa, FL 33612-5071

CT Corporatiom System, as representative
330 N. Brand Blvd., #700
Attn:  SPRS
Glendale, CA 91203-2336

City Wide Facility Solutions-Orlando
c/o Commercial Collection Corp.
P.O. Box 288
Tonawanda, NY 14151-0288

Cobalt Funding Solutions
99 Wall St., #3618
New York, NY 10005-4301

Delta Bridge Funding, LLC, as servicer
for CloudFund, LLC
400 Rella Blvd., #165-101
Suffern, NY 10901-4241

Department of Revenue
PO Box 6668
Tallahassee FL 32314-6668

Felicity Property Co.
1320 Magazine St., #201
New Orleans, LA 70130-4267

G and G Funding Group, LLC
57 W. 57th St., Floor 4
New York, NY 10019-2827

Green Capital Funding, LLC
116 Nassau St., #804
New York, NY 10038-2481

Green Capital Funding, LLC
53 Mason St.
Greenwich, CT 06830-5434

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Ivanhoe Place Propco, LLC
c/o Real Estate Inverlad Development LLC
101 S. Eola Dr., #1215
Orlando, FL 32801-6612

Kabbage, Inc.
Attn:  Kim Withrow, Esq.
925B Peachtree St. NE, #383
Atlanta, GA 30309-3918

Leaf Capital Funding, LLC
2005 Market St., 14th Floor
Philadelphia, PA 19103-7009

Max Recovery Group, LLC
55 Broadway, 3rd Floor
New York, NY 10006-3757

Modulo, LLC
1704 W North A St
Tampa, FL 33606-1634

Modulo, LLC
2405 E. 8th Ave.
Tampa, FL 33605-4046

Newgenteck
5555 W. Waters Ave.
Tampa, FL 33634-1230

Newtek Small Business Finance, LLC
1981 Marcus Ave., #130
New Hyde Park, NY 11042-1046

Newtek Small Business Finance, LLC
4800 T-Rex Ave., #120
Boca Raton, FL 33431-4479

Novac Equities, LLC
25 SW 9th St., #202
Miami, FL 33130-3892

Premium Merchant Funding 26, LLC
55 Water St., Floor 50
New York, NY 10041-3203

Reef Funding Group
c/o Novac Equities, LLC
1100 Brickell Bay Dr.
Miami, FL 33131-3539

Sysco Corporation
1390 Enclave Parkway
Houston, TX 77077-2099

U.S. Attorney
Attn: Civil Process Clerk
400 N. Tampa St., #3200
Tampa, FL 33602-4774

U.S. Small Business Administration
2 North St., #320
Birmingham, AL 35203


Vivian Capital Group, LLC
486 Market St.
Newark, NJ 07105-2916

WebBank
215 S. State St., #1000
Salt Lake City, UT 84111-2336

World Global Fund
20807 Biscayne Blvd., #203
Miami, FL 33180-1410


Zahav Asset Management, LLC
234 Cedarhurst Ave., Apt 21B
Cedarhurst, NY 11516-1608

Zahav Asset Management, LLC
420 Central Ave.
Cedarhurst, NY 11516-1000

United States Trustee - TPA +
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949


Edward J. Peterson III +
Stichter, Riedel, Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, FL 33602-4718


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Note: Entries with a '+' at the end of the
name have an email address on file in CMECF
---------------------------------------------
Note: Entries with a '-' at the end of the
name have filed a claim in this case

End of Label Matrix
Mailable recipients    39
Bypassed recipients     1
Total                  40

## <u>Exhibit A</u>

**Interim Financing Order**

(See Attached Document)

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.uscourts.flmb.gov

In re:                                          Chapter 11, Subchapter V

THE HALL AT THE YARD LLC,             Case No. 8:23-bk-00250

        Debtor.

_____/

**INTERIM ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR
AUTHORITY TO OBTAIN POSTPETITION FINANCING
AND GRANT SENIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE
<u>EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 364(c) AND (d) AND F.R.B.P 4001</u>
(Final Hearing Set for February __, 2023, at _____.m.;
Deadline for Objections is February _____, 2023, at _____.m.)**

THIS CASE came on before the Court for an initial hearing on January _____, 2023,

at _____.m. (the "**Interim Hearing**"), on the Debtor's Emergency Motion for Authority to

Obtain Postpetition Financing and Grant Senior Liens and Superpriority Administrative Expense

Status Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001 (Doc. No. _____)    (the

"**Motion**")[1] filed by The Hall at the Yard LLC (the "**Debtor**"), for the entry of an order:

---

[1]    Unless otherwise defined herein, capitalized terms used in this Interim Order shall have the meaning ascribed
to such terms in the Motion.

(A)    authorizing the Debtor to borrow up to an aggregate principal amount of $100,000.00 of senior secured and superpriority basis financing (the "**DIP Facility**") from M Funding I, LLC or a Virginia limited liability company (the "**DIP Lender**"), substantially in accordance with the terms of the Motion;

(B)    authorizing the Debtor to execute definitive debtor in possession loan documents and such other necessary documents, instruments and agreements (collectively, the "**DIP Loan Documents**"), which shall be consistent with the terms of the Motion and the Financing Orders, and perform all such other and further acts as may be necessary or appropriate in connection therewith;

(C)    authorizing the Debtor, under Section 364 of the Bankruptcy Code, to obtain postpetition financing and incur postpetition indebtedness under the DIP Facility, which financing and indebtedness due and owing by the Debtor to the DIP Lender shall be secured by liens on and security interests in all property of the Debtor pursuant to Sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code, which liens and security interests shall be senior to all prepetition and postpetition liens on property of the Debtor;

(D)    authorizing the Debtor to grant to the DIP Lender, in accordance with Section 364(c)(1) of the Bankruptcy Code, a superpriority administrative expense claim having priority over any and all administrative expenses of and priority claims against the Debtor, subject only to the Carve-Out Expenses (as defined below);

(E)    modifying and, to the extent necessary, lifting the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to permit the DIP Lender and the Debtor to implement the terms of the Motion, the DIP Loan Documents and the Financing Orders;

(F)      scheduling the Final Hearing (as defined below) pursuant to Bankruptcy Rule 4001 with respect to the relief requested in the Motion for this Court to consider the entry of the Final Financing Order; and

(G)      granting the Debtor such other and further relief as the Court deems necessary, appropriate, equitable, proper, and consistent with the terms of the Motion.

The Court having considered the Motion, finding, in accordance with Rule 400l of the Bankruptcy Rules that due and proper notice of the Motion was given under the circumstances; having considered all pleadings filed with the Court and all of the proceedings held before the Court; and after due deliberation and consideration of all matters, including the argument and proffers of counsel at the Interim Hearing, and good and sufficient cause appearing therefor, finds and concludes as follows:[2]

A.      On January 24, 2023 (the "**Petition Date**"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and made an election to proceed under Subchapter V pursuant to the Small Business Reorganization Act of 2019, as amended.

B.      Since the Petition Date, the Debtor has continued to operate its business and manage its properties as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

C.      No official committee of unsecured creditors or equity security holders (a "**Committee**") has been appointed in this case.

---

[2]      Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

D.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  The subject matter of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought in the Motion are Sections 105, 361, 362, 363, 364 and 545 of the Bankruptcy Code, Rules 4001(c) and (d) of the Bankruptcy Rules, and Rule 2081-1(f)(2) of the Local Rules of the Court (the "**Local Rules**").

E.      The Debtor represents that: (i) an immediate and critical need exists for the Debtor to obtain the DIP Facility; (ii) the interim financing authorized hereunder is vital to avoid immediate and irreparable harm to the Debtor's estate and to allow the orderly continuation of the Debtor's business; (iii) without the DIP Facility, the Debtor will not be able to operate its business during this case; (iv) the ability of the Debtor to obtain the DIP Facility is vital to the preservation and maintenance of the going concern value of the Debtor's assets; and (v) the incurrence of new indebtedness for borrowed money and other financial accommodations afforded by the DIP Facility are in the best interests of the Debtor and its creditors and its estate.

F.      The Debtor represents that it has made substantial efforts to obtain a postpetition loan from numerous third-party lenders on terms equal to or better than the DIP Facility.  The Debtor further represents that it is unable to obtain a postpetition loan (i) from any source other than the DIP Lender, (ii) in the form of unsecured credit or unsecured debt allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to Section 364(a) or (b) of the Bankruptcy Code or as a secured debt as described in Section 364(c)(2) or (3) of the Bankruptcy Code, and (iii) unless the Debtor grants the DIP Lender senior first priority liens on and security interests in the Collateral pursuant to Section 364(d) of the Bankruptcy Code and a

superpriority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code, subject to the terms of this Interim Order and the DIP Loan Documents.

G.      The DIP Lender has agreed to provide interim financing pursuant to this Interim Order, all on the terms and subject to the conditions set forth in this Interim Order and in the DIP Loan Documents and a finding by the Court that such financing is essential to the Debtor and its estate and its creditors.

H.      The terms of the DIP Facility are more favorable to the Debtor than those available from alternative sources.  Based upon the record before the Court and the proffers of counsel for the Debtor and for the DIP Lender at the Interim Hearing, the DIP Loan Documents and the terms of this Interim Order have been negotiated in good faith and at arm's-length between the Debtor and the DIP Lender.  Any and all financial accommodations made to the Debtor by the DIP Lender pursuant to this Interim Order and the DIP Loan Documents shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, and the DIP Lender shall be entitled to all protections afforded thereby.

I.      Notice of the Interim Hearing and the proposed entry of this Interim Order has been provided to the U.S. Trustee, the DIP Lender and its counsel, all known secured creditors of the Debtor, all parties listed on the Local Rule 1007-2 Parties in Interest List for this case, the Debtor's twenty (20) largest unsecured creditors, and certain other parties as listed in the Motion.  Under these urgent circumstances, requisite notice of the Motion and the relief requested thereby and in this Interim Order has been given in accordance with Rule 4001 of the Bankruptcy Rules and Rule 2081-1(f)(2) of the Local Rules, which notice is sufficient for all purposes and no other notice need be given for entry of this Interim Order.

J.      The terms of the DIP Loan Documents, this Interim Order, and the DIP Facility are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

K.      The Debtor has requested immediate entry of this Interim Order so that the DIP Lender will advance funds in accordance with a proposed budget to be filed with the Court prior to the hearing on this Motion.  Until the Final Hearing, the total Advances shall not exceed the amount of $58,000.00.

L.      The partial relief granted herein to obtain the DIP Facility is necessary to avoid immediate and irreparable harm to the Debtor's estate.  This Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for the Debtor to continue operating its business and providing services to its customers without interruption.  Accordingly, it is

**ORDERED:**

1.      The Motion is granted on an interim basis on the terms and conditions set forth in this Interim Order.

2.      All objections to the Motion and the entry of this Interim Order have been withdrawn or are hereby overruled.

3.      The Motion is set for a final hearing on **February      2023, at      .m.** (the "**Final Hearing**") in this Court.  This Interim Order shall constitute adequate and sufficient notice of the Final Hearing.

4.      Objections to the Motion, this Interim Order or the entry of the Final Financing Order shall be in writing, shall be filed with the Clerk of the Bankruptcy Court, and

6

shall be served on counsel for the Debtor, counsel for the DIP Lender and all parties on the Local Rule 1007-2 Parties in Interest List for this case **by no later than February    , 2023, at    .m., Eastern Standard Time** (the "**Objection Deadline**").  Any such objections not filed by the Objection Deadline shall be deemed waived.  This Interim Order shall constitute adequate and sufficient notice of the Objection Deadline.

5.      The Debtor is expressly authorized and empowered to (i) borrow up to $58,000.00 from the DIP Lender until the Final Hearing on the terms and conditions set forth in this Interim Order and the DIP Loan Documents; (ii) execute and deliver to the DIP Lender all of the DIP Loan Documents; and (iii) perform its obligations under the DIP Loan Documents in accordance with the terms thereof, subject in all events to the terms of this Interim Order and the Final Financing Order.

6.      The Debtor may enter into such other agreements, instruments and documents as may be necessary or required or requested by the DIP Lender in its sole discretion to evidence the DIP Facility and to consummate the terms and provisions contemplated by the DIP Loan Documents and this Interim Order and to evidence perfection of the liens and security interests to be given to the DIP Lender hereunder.  The Debtor and the DIP Lender may enter into any non-material amendments of or modification to the DIP Loan Documents without the need of further notice and hearing or order of this Court.

7.      The Debtor may use the proceeds of the DIP Facility solely to pay the expenses set forth in the budget attached to this Interim Order as Exhibit A and incorporated herein (the "**Approved Budget**"), plus an amount not to exceed ten percent (10%) for each line item in the Approved Budget, and otherwise solely in accordance with the terms and conditions of the DIP Loan Documents and this Interim Order.

7

8.      All indebtedness and obligations incurred by the Debtor on or after the Petition Date with respect to loans, advances and any other indebtedness or obligations, contingent or absolute, pursuant to this Interim Order and the DIP Loan Documents which may now or from time to time hereafter be owing by the Debtor to the DIP Lender (including principal, accrued and unpaid interest, fees, costs and expenses, including without limitation reasonable attorneys' fees and expenses, and any other amounts owed under this Interim Order or the DIP Loan Documents) are referred to in this Interim Order as the "**DIP Loan Obligations**".

9.      The DIP Loan Obligations shall bear interest at the rate of eighteen percent (18%) per annum, compounded monthly.

10.      Notwithstanding anything in this Interim Order to the contrary, the DIP Facility shall immediately and automatically terminate (except as the DIP Lender may otherwise agree in writing in its sole discretion), and all obligations owed under the DIP Loan Documents shall immediately be due and payable, upon the Maturity Date.  In the event of a postpetition default by the Debtor of the terms of this Interim Order and/or the DIP Loan Documents, the DIP Lender may declare the DIP Loan Obligations immediately due and owing; provided that the DIP Lender may not exercise any remedies against the Debtor upon such default without first providing ten (10) business days' written notice of such default to the Debtor, having a hearing before the Court, and obtaining an order of the Court.

11.      Subject to this Interim Order, the DIP Loan Documents and all indebtedness incurred thereby constitute valid, binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms.  Except as set forth in the Final Financing Order, the rights, remedies, powers, privileges, liens, and priorities of the DIP Lender provided for in this Interim Order and in the DIP Loan Documents shall not be modified, altered or impaired in any manner

8

by any subsequent order (including a confirmation order, an order approving an asset sale under Section 363 of the Bankruptcy Code or otherwise) or by any plan of reorganization or liquidation in this Chapter 11 case or in any subsequent case under the Bankruptcy Code unless the DIP Loan Obligations have been paid indefeasibly in full in cash or otherwise satisfied on terms and conditions acceptable to the DIP Lender in its sole and absolute discretion.

12. In consenting to make advances and to extend other financial accommodations to the Debtor under the DIP Loan Documents or to collect the DIP Loan Obligations of the Debtor, the DIP Lender shall not (i) have liability to any third party nor shall the DIP Lender be deemed to be in control of the Debtor's operations or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the Debtor's operation or management (as such terms, or any similar terms, are used in the Internal Revenue Code, the Unites States Comprehensive, Environmental Response, Compensation and Liability Act as amended, or any similar federal or state statute), or owe any fiduciary duty to the Debtor, its creditors or estate, and (ii) the DIP Lender's relationship with the Debtor shall not constitute nor be deemed to constitute a joint venture or partnership with the Debtor.

13. Subject to the terms of this Interim Order, the Debtor is authorized and directed to take and effect all actions, and to execute and deliver all agreements, instruments and documents, required or necessary for its performance under the DIP Loan Documents.

14. As security for the DIP Loan Obligations, the DIP Lender shall be, and hereby is, granted, effective immediately and without the necessity of the execution by the Debtor of financing statements, deposit account control agreements, security agreements, or otherwise, in accordance with Section 364(d)(1) of the Bankruptcy Code, a valid and perfected first priority, senior lien on and security interest in the Collateral (the "**DIP Facility Liens**"); provided however,

9

that, for purposes of this Interim Order, the Collateral shall specifically not include any and all claims, causes of action or rights arising under Chapter 5 of the Bankruptcy Code, including Sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, and all proceeds or recoveries therefrom.  The security interests and liens granted to the DIP Lender shall not be made on a parity with, or subordinated to, any other security interest or lien under Section 364(d) of the Bankruptcy Code or otherwise.

15.    Subject to the Carve-Out Expenses defined and described in paragraph 16 of the Interim Order, effective upon entry of this Interim Order, the DIP Loan Obligations shall constitute, in accordance with Section 364(c)(1) of the Bankruptcy Code, claims against the Debtor in its Chapter 11 case which are administrative expense claims having the highest administrative priority over any and all administrative expenses, whenever arising, of the kind specified in any provision of the Bankruptcy Code, including, but not limited to, Sections 105, 326, 328, 330, 331, 363, 364, 503, 507, 546, 726, 1113 or 1114 of the Bankruptcy Code.  No costs or administrative expenses which have been or may be incurred in this Chapter 11 case or in any subsequent case under Chapter 7 of the Bankruptcy Code as a result of a conversion pursuant to Section 1112 of the Bankruptcy Code, and no priority claims, are or will be prior to or on a parity with the claims of the DIP Lender with respect to the DIP Loan Obligations.  No other claim having a priority superior to or pari passu with that granted by this Interim Order to the DIP Lender shall be granted in respect of the Debtor while any portion of the DIP Loan Obligations remains outstanding.

16.    All liens and claims of the DIP Lender hereunder, including, but not limited to, the DIP Facility Liens and the superpriority administrative expense claims, shall not have priority over and shall be subject to the payment of (i) any unpaid fees due and payable pursuant to 28 U.S.C. § 1930 (including, without limitation, fees under 28 U.S.C. § 1930(a)(6)), (ii) any

10

unpaid fees due and payable to the Clerk of the Court, (iii) the actual fees and expenses incurred by the Debtor's bankruptcy counsel, Stichter, Riedel, Blain & Postler, P.A. ("**SRBP**"), for the period prior to the occurrence of the Maturity Date (for which written notice has been provided by the DIP Lender to the Debtor and its counsel), provided such fees and expenses are subsequently allowed by the Court under Sections 330 and 331 of the Bankruptcy Code, and (iv) following the occurrence of the Maturity Date (which occurrence is not waived by the DIP Lender and for which the DIP Lender has provided written notice to the Debtor and its counsel), allowed professional fees and disbursements incurred after notice of the Maturity Date by SRBP in an aggregate amount not to exceed $30,000.00; provided that such amounts are (i) allowed by the Court, and (ii) not otherwise paid from any unused portion of any retainers or unused amounts for payments to SRBP set forth in the Approved Budget (the items in subparagraphs (i)-(iv), collectively, the "**Carve-Out Expenses**"); provided, however, that the term "Carve-Out Expenses" shall not include any fees and expenses incurred by members of a Committee or any professionals employed by a Committee.  Prior to receiving written notice of the Maturity Date, the Debtor shall be authorized to pay to SRBP its incurred fees and expenses (subject to the Approved Budget and allowance, but whenever allowed) from the DIP Facility.

17.    The DIP Facility Liens shall be, and are hereby deemed, duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act shall be required to effect such perfection; provided, however, that notwithstanding the provisions of Section 362 of the Bankruptcy Code which stay is lifted for the limited purpose of allowing perfection, the DIP Lender may (i) at its sole option, file or record or cause the Debtor to obtain any such landlord or warehousemen lien waivers or

11

other third party consents or execute, file or record, at the Debtor's expense, any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as the DIP Lender may require, and (ii) require the Debtor to deliver to the DIP Lender any chattel paper, instruments or securities evidencing or constituting any Collateral, and the Debtor is directed to cooperate and comply therewith.  If the DIP Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehousemen lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such security interests and liens or, if the DIP Lender, in accordance with the DIP Loan Documents or this Interim Order, elects to take possession of any Collateral, all such landlord or warehousemen lien waivers or other third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in this Chapter 11 case as of the commencement of this Chapter 11 case but with the priorities as set forth herein.  The DIP Lender may, in its sole discretion, but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which the Debtor has property.

18.    Notwithstanding the occurrence of an Event of Default under the DIP Loan Documents or anything herein, all of the rights, remedies, benefits and protections provided to the DIP Lender under this Interim Order and the DIP Loan Documents shall survive the termination of any obligation of the DIP Lender to make loans and advances under the DIP Loan Documents.

19.    The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtor, and their respective successors and assigns.  This Interim Order shall bind any trustee or other responsible person or officer hereafter appointed or elected for the estate of the Debtor, whether in this Chapter 11 case or in the event of the conversion of

12

the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Interim Order.

20. The provisions of this Interim Order shall also be binding upon all creditors of the Debtor and other parties in interest. No third parties are intended to be or shall be deemed to be third party beneficiaries of this Interim Order or the DIP Loan Documents.

21. No failure or delay on the part of the DIP Lender in exercising any right, power or privilege provided for in this Interim Order or in the DIP Loan Documents shall operate as a waiver thereof. This Interim Order shall not be deemed or construed in any way as a waiver or relinquishment of any rights the DIP Lender may have to bring or be heard on any matter brought before this Court.

22. Without limiting the rights of access and information afforded the DIP Lender under the DIP Loan Documents, the Debtor shall permit representatives, agents and/or employees of the DIP Lender to have reasonable access to the Debtor's premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtor's business) and shall cooperate, consult with and provide to such persons all such non-privileged information as they may reasonably request.

23. The Debtor shall not, without the DIP Lender's prior written consent (which shall be given or refused in its sole discretion), seek to modify, vacate or amend this Interim Order or any DIP Loan Documents. If any or all of the provisions of this Interim Order or the DIP Loan Documents are hereafter modified, vacated, amended or stayed by subsequent order of this Court or any other court, such modification, vacatur, amendment or stay shall not affect the validity of any obligation to the DIP Lender that is or was incurred prior to the effective date of such modification, vacatur, amendment or stay, or the validity and enforceability of any security

13

interest, lien or priority authorized or created by this Interim Order or the DIP Loan Documents and, notwithstanding any such modification, vacatur, amendment or stay, any obligations of the Debtor pursuant to this Interim Order or the DIP Loan Documents arising prior to the effective date of such modification, vacatur, amendment or stay shall be governed in all respects by the original provisions of this Interim Order and the DIP Loan Documents, and the validity of any such credit extended or security interest or lien granted pursuant to this Interim Order or the DIP Loan Documents is subject to the protection accorded the DIP Lender under Section 364(e) of the Bankruptcy Code.

24.     If this Chapter 11 case is dismissed, converted, otherwise superseded or substantively consolidated, the DIP Lender's rights and remedies under this Interim Order and the DIP Loan Documents shall be and remain in full force and effect as if this Chapter 11 case had not been dismissed, converted, superseded or substantively consolidated.    Furthermore, notwithstanding any such dismissal, conversion, or substantive consolidation, all of the terms and conditions of this Interim Order, including, without limitation, the liens and the priorities granted hereunder, shall remain in full force and effect.

25.     The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtor to obtain credit on the terms and conditions upon which the Debtor and the DIP Lender have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under Section 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in Section 364(e) of the Bankruptcy Code.

26.     This Interim Order shall be fully effective immediately upon entry on the docket for this case.

27.    To the extent any provisions in this Interim Order conflict with any provisions of the Motion, or any DIP Loan Document, the provisions of this Interim Order shall control.

28.    Counsel for the Debtor is directed to serve a copy of this Interim Order as provided below and on all parties served with the Motion (including the twenty (20) largest unsecured creditors of the Debtor, who shall be served by facsimile or electronic mail transmission) within three (3) days after the entry of this Interim Order and thereafter to file a certificate of service with the Court.

Attorney Edward J. Peterson is directed to serve a copy of this order on interested parties who receive service by CM/ECF and file a proof of service within 3 days of entry of this order.

4857-5111-5340, v. 1

## **EXHIBIT A**

**Approved Budget**

(See Attached Document)