ORDERED.

Dated: March 27, 2023

*Catherine M<sup>c</sup>Ewen* (signature)
Catherine Peek McEwen
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.uscourts.flmb.gov

In re:

THE HALL AT THE YARD LLC,   Case No. 8:23-bk-00250-CPM
                            Chapter 11, Subchapter V

    Debtor.
_____/

**FINAL ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO OBTAIN POSTPETITION FINANCING AND GRANT SENIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 364(c) AND (d) AND F.R.B.P 4001**

THIS CASE came on before the Court for a final hearing on March 2, 2023, at 11:00 a.m. (the "**Final Hearing**"), on the Debtor's Emergency Motion for Authority to Obtain Postpetition Financing and Grant Senior Liens and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001 (Doc. No. 12) (the "**Motion**")[1] filed by The Hall at the Yard LLC (the "**Debtor**"), for the entry of an order:

(A)    authorizing the Debtor to borrow up to an aggregate principal amount of $100,000.00 of senior secured and superpriority basis financing (the "**DIP Facility**") from

---

[1] Unless otherwise defined herein, capitalized terms used in this Final Order shall have the meaning ascribed to such terms in the Motion.

McIntyre Funding I, LLC (the "**DIP Lender**"), substantially in accordance with the terms of the Motion;

(B)   authorizing the Debtor to execute definitive debtor in possession loan documents and such other necessary documents, instruments and agreements (collectively, the "**DIP Loan Documents**"), which shall be consistent with the terms of the Motion and the Financing Orders, and perform all such other and further acts as may be necessary or appropriate in connection therewith;

(C)   authorizing the Debtor, under Section 364 of the Bankruptcy Code, to obtain postpetition financing and incur postpetition indebtedness under the DIP Facility, which financing and indebtedness due and owing by the Debtor to the DIP Lender shall be secured by liens on and security interests in all property of the Debtor (excluding the Debtor's leasehold interest in the Premises) (the "**DIP Loan Collateral**") pursuant to Sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code, which liens and security interests shall be senior to all prepetition and postpetition liens on property of the Debtor; provided, however, that such liens and security interests granted to the DIP Lender hereunder with respect to the DIP Loan Collateral shall be junior to any liens and security interests existing in favor of Ivanhoe Place Propco, LLC, a Delaware limited liability company (the "**Landlord**");

(D)   authorizing the Debtor to grant to the DIP Lender, in accordance with Section 364(c)(1) of the Bankruptcy Code, a superpriority administrative expense claim having priority over any and all administrative expenses of and priority claims against the Debtor, subject only to the Carve-Out Expenses (as defined below);

(E)     modifying and, to the extent necessary, lifting the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to permit the DIP Lender and the Debtor to implement the terms of the Motion, the DIP Loan Documents and the Financing Orders;

(F)     scheduling the Final Hearing (as defined below) pursuant to Bankruptcy Rule 4001 with respect to the relief requested in the Motion for this Court to consider the entry of the Final Financing Order; and

(G)     granting the Debtor such other and further relief as the Court deems necessary, appropriate, equitable, proper, and consistent with the terms of the Motion.

The Court having considered the Motion, finding, in accordance with Rule 4001 of the Bankruptcy Rules that due and proper notice of the Motion was given under the circumstances; having considered all pleadings filed with the Court and all of the proceedings held before the Court; and after due deliberation and consideration of all matters, including the argument and proffers of counsel at the Final Hearing, and good and sufficient cause appearing therefor, finds and concludes as follows:[2]

A.     On January 24, 2023 (the "**Petition Date**"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and made an election to proceed under Subchapter V pursuant to the Small Business Reorganization Act of 2019, as amended.

B.     Since the Petition Date, the Debtor has continued to operate its business and manage its properties as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

C. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. The subject matter of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought in the Motion are Sections 105, 361, 362, 363, 364 and 545 of the Bankruptcy Code, Rules 4001(c) and (d) of the Bankruptcy Rules, and Rule 2081-1(f)(2) of the Local Rules of the Court (the "**Local Rules**").

D. The Debtor represents that: (i) an immediate and critical need exists for the Debtor to obtain the DIP Facility; (ii) the financing authorized hereunder is vital to avoid immediate and irreparable harm to the Debtor's estate and to allow the orderly continuation of the Debtor's business; (iii) without the DIP Facility, the Debtor will not be able to operate its business during this case; (iv) the ability of the Debtor to obtain the DIP Facility is vital to the preservation and maintenance of the going concern value of the Debtor's assets; and (v) the incurrence of new indebtedness for borrowed money and other financial accommodations afforded by the DIP Facility are in the best interests of the Debtor and its creditors and its estate.

E. The Debtor represents that it has made substantial efforts to obtain a postpetition loan from numerous third-party lenders on terms equal to or better than the DIP Facility. The Debtor further represents that it is unable to obtain a postpetition loan (i) from any source other than the DIP Lender, (ii) in the form of unsecured credit or unsecured debt allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to Section 364(a) or (b) of the Bankruptcy Code or as a secured debt as described in Section 364(c)(2) or (3) of the Bankruptcy Code, and (iii) unless the Debtor grants the DIP Lender senior first priority liens on and security interests in the DIP Loan Collateral pursuant to Section 364(d) of the Bankruptcy

4890-3193-1989, v. 1

Code and a superpriority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code, subject to the terms of this Final Order and the DIP Loan Documents.

F. The DIP Lender has agreed to provide financing pursuant to this Final Order, all on the terms and subject to the conditions set forth in this Final Order and in the DIP Loan Documents and a finding by the Court that such financing is essential to the Debtor and its estate and its creditors.

G. The terms of the DIP Facility are more favorable to the Debtor than those available from alternative sources. Based upon the record before the Court and the proffers of counsel for the Debtor and for the DIP Lender at the Final Hearing, the DIP Loan Documents and the terms of this Final Order have been negotiated in good faith and at arm's-length between the Debtor and the DIP Lender. Any and all financial accommodations made to the Debtor by the DIP Lender pursuant to this Final Order and the DIP Loan Documents shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, and the DIP Lender shall be entitled to all protections afforded thereby.

H. Notice of the Final Hearing and the proposed entry of this Final Order has been provided to the U.S. Trustee, the DIP Lender and its counsel, all known secured creditors of the Debtor, all parties listed on the Local Rule 1007-2 Parties in Interest List for this case, the Debtor's twenty (20) largest unsecured creditors, and certain other parties as listed in the Motion. Under these urgent circumstances, requisite notice of the Motion and the relief requested thereby and in this Final Order has been given in accordance with Rule 4001 of the Bankruptcy Rules and Rule 2081-1(f)(2) of the Local Rules, which notice is sufficient for all purposes and no other notice need be given for entry of this Final Order.

   I.  The terms of the DIP Loan Documents, this Final Order, and the DIP Facility are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

   J.  The Debtor has requested immediate entry of this Final Order so that the DIP Lender will advance funds in accordance with the Approved Budget (as defined below).  The total Advances shall not exceed the amount of $100,000.00.

   K.  The partial relief granted herein to obtain the DIP Facility is necessary to avoid immediate and irreparable harm to the Debtor's estate.  This Court concludes that entry of this Final Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for the Debtor to continue operating its business and providing services to its customers without interruption.  Accordingly, it is:

   **ORDERED:**

   1.  The Motion is granted on a final basis on the terms and conditions set forth in this Final Order.

   2.  All objections to the Motion and the entry of this Final Order have been withdrawn or are hereby overruled.

   3.  The Debtor is expressly authorized and empowered to (i) borrow up to $100,000.00 from the DIP Lender on the terms and conditions set forth in this Final Order and the DIP Loan Documents; (ii) execute and deliver to the DIP Lender all of the DIP Loan Documents; and (iii) perform its obligations under the DIP Loan Documents in accordance with the terms thereof, subject in all events to the terms of this Final Order.

4890-3193-1989, v. 1

4. The Debtor may enter into such other agreements, instruments and documents as may be necessary or required or requested by the DIP Lender in its sole discretion to evidence the DIP Facility and to consummate the terms and provisions contemplated by the DIP Loan Documents and this Final Order and to evidence perfection of the liens and security interests in the DIP Loan Collateral to be given to the DIP Lender hereunder. The Debtor and the DIP Lender may enter into any non-material amendments of or modification to the DIP Loan Documents without the need of further notice and hearing or order of this Court.

5. The Debtor may use the proceeds of the DIP Facility solely to pay the expenses set forth in the budget attached to this Final Order as <u>Exhibit A</u> and incorporated herein (the "**Approved Budget**"), plus an amount not to exceed ten percent (10%) for each line item in the Approved Budget, and otherwise solely in accordance with the terms and conditions of the DIP Loan Documents and this Final Order.

6. All indebtedness and obligations incurred by the Debtor on or after the Petition Date with respect to loans, advances and any other indebtedness or obligations, contingent or absolute, pursuant to this Final Order and the DIP Loan Documents which may now or from time to time hereafter be owing by the Debtor to the DIP Lender (including principal, accrued and unpaid interest, fees, costs and expenses, including without limitation reasonable attorneys' fees and expenses, and any other amounts owed under this Final Order or the DIP Loan Documents) are referred to in this Final Order as the "**DIP Loan Obligations**".

7. The DIP Loan Obligations shall bear interest at the rate of eighteen percent (18%) per annum.

8. Notwithstanding anything in this Final Order to the contrary, the DIP Facility shall immediately and automatically terminate (except as the DIP Lender may otherwise

agree in writing in its sole discretion), and all obligations owed under the DIP Loan Documents shall immediately be due and payable, upon the Maturity Date or in the event the Court has not approved the Debtor's engagement of a chief restructuring officer acceptable to the DIP Lender. In the event of a postpetition default by the Debtor of the terms of this Final Order and/or the DIP Loan Documents, the DIP Lender may declare the DIP Loan Obligations immediately due and owing; provided that the DIP Lender may not exercise any remedies against the Debtor upon such default without first providing ten (10) business days' written notice of such default to the Debtor, having a hearing before the Court, and obtaining an order of the Court.

9. Subject to this Final Order, the DIP Loan Documents and all indebtedness incurred thereby constitute valid, binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms. Except as set forth in the Final Financing Order, the rights, remedies, powers, privileges, liens, and priorities of the DIP Lender provided for in this Final Order and in the DIP Loan Documents shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order, an order approving an asset sale under Section 363 of the Bankruptcy Code or otherwise) or by any plan of reorganization or liquidation in this Chapter 11 case or in any subsequent case under the Bankruptcy Code unless the DIP Loan Obligations have been paid indefeasibly in full in cash or otherwise satisfied on terms and conditions acceptable to the DIP Lender in its sole and absolute discretion.

10. In consenting to make advances and to extend other financial accommodations to the Debtor under the DIP Loan Documents or to collect the DIP Loan Obligations of the Debtor, the DIP Lender shall not (i) have liability to any third party nor shall the DIP Lender be deemed to be in control of the Debtor's operations or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the Debtor's

4890-3193-1989, v. 1

operation or management (as such terms, or any similar terms, are used in the Internal Revenue Code, the Unites States Comprehensive, Environmental Response, Compensation and Liability Act as amended, or any similar federal or state statute), or owe any fiduciary duty to the Debtor, its creditors or estate, and (ii) the DIP Lender's relationship with the Debtor shall not constitute nor be deemed to constitute a joint venture or partnership with the Debtor.

11. Subject to the terms of this Final Order, the Debtor is authorized and directed to take and effect all actions, and to execute and deliver all agreements, instruments and documents, required or necessary for its performance under the DIP Loan Documents.

12. As security for the DIP Loan Obligations, the DIP Lender shall be, and hereby is, granted, effective immediately and without the necessity of the execution by the Debtor of financing statements, deposit account control agreements, security agreements, or otherwise, in accordance with Section 364(d)(1) of the Bankruptcy Code, a valid and perfected first priority, senior lien on and security interest in the DIP Loan Collateral (the "**DIP Facility Liens**"); provided however, that such liens and security interests granted to the DIP Lender hereunder with respect to the DIP Loan Collateral shall be junior to any liens and security interests in favor of the Landlord; and that, for purposes of this Final Order, the DIP Loan Collateral shall specifically not include any and all claims, causes of action or rights arising under Chapter 5 of the Bankruptcy Code, including Sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, and all proceeds or recoveries therefrom. Except with respect to the Landlord as addressed herein, the security interests and liens granted to the DIP Lender shall not be made on a parity with, or subordinated to, any other security interest or lien under Section 364(d) of the Bankruptcy Code or otherwise.

13. Subject to the Carve-Out Expenses defined and described in paragraph 16 of the Final Order, effective upon entry of this Final Order, the DIP Loan Obligations shall constitute, in accordance with Section 364(c)(1) of the Bankruptcy Code, claims against the Debtor in its Chapter 11 case which are administrative expense claims having the highest administrative priority over any and all administrative expenses, whenever arising, of the kind specified in any provision of the Bankruptcy Code, including, but not limited to, Sections 105, 326, 328, 330, 331, 363, 364, 503, 507, 546, 726, 1113 or 1114 of the Bankruptcy Code. No costs or administrative expenses which have been or may be incurred in this Chapter 11 case or in any subsequent case under Chapter 7 of the Bankruptcy Code as a result of a conversion pursuant to Section 1112 of the Bankruptcy Code, and no priority claims, are or will be prior to or on a parity with the claims of the DIP Lender with respect to the DIP Loan Obligations. No other claim having a priority superior to or *pari passu* with that granted by this Final Order to the DIP Lender shall be granted in respect of the Debtor while any portion of the DIP Loan Obligations remains outstanding.

14. All liens and claims of the DIP Lender hereunder, including, but not limited to, the DIP Facility Liens and the superpriority administrative expense claims, shall not have priority over and shall be subject to the payment of (i) any unpaid fees due and payable pursuant to 28 U.S.C. § 1930 (including, without limitation, fees under 28 U.S.C. § 1930(a)(6)), (ii) any unpaid fees due and payable to the Clerk of the Court, (iii) any unpaid fees and expenses incurred by a Subchapter V Trustee, (iv) the actual fees and expenses incurred by the Debtor's bankruptcy counsel, Johnson Pope Bokor Ruppel & Burns, LLP ("**Johnson Pope**"), for the period prior to the occurrence of the Maturity Date (for which written notice has been provided by the DIP Lender to the Debtor and its counsel), provided such fees and expenses are subsequently allowed by the Court under Sections 330 and 331 of the Bankruptcy Code, (v) following the occurrence of the

Maturity Date (which occurrence is not waived by the DIP Lender and for which the DIP Lender has provided written notice to the Debtor and its counsel), allowed professional fees and disbursements incurred after notice of the Maturity Date by Johnson Pope in an aggregate amount not to exceed $30,000.00; provided that such amounts are (i) allowed by the Court, (ii) not otherwise paid from any unused portion of any retainers or unused amounts for payments to Johnson Pope set forth in the Approved Budget, and (vi) any and all claims, causes of action or rights arising under Chapter 5 of the Bankruptcy Code, including Sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, and all proceeds or recoveries therefrom (the items in subparagraphs (i)-(vi), collectively, the "**Carve-Out Expenses**"). Prior to receiving written notice of the Maturity Date, the Debtor shall be authorized to pay to Johnson Pope its incurred fees and expenses (subject to the Approved Budget and allowance, but whenever allowed) from the DIP Facility.

15. The DIP Facility Liens shall be, and are hereby deemed, duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act shall be required to effect such perfection; provided, however, that notwithstanding the provisions of Section 362 of the Bankruptcy Code which stay is lifted for the limited purpose of allowing perfection, the DIP Lender may (i) at its sole option, file or record or cause the Debtor to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtor's expense, any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as the DIP Lender may require with respect to the DIP Loan Collateral, and (ii) require the Debtor to deliver to the DIP Lender any chattel paper, instruments or securities evidencing or

constituting any DIP Loan Collateral, and the Debtor is directed to cooperate and comply therewith. If the DIP Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehousemen lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such security interests and liens or, if the DIP Lender, in accordance with the DIP Loan Documents or this Final Order, elects to take possession of any DIP Loan Collateral, all such landlord or warehousemen lien waivers or other third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in this Chapter 11 case as of the commencement of this Chapter 11 case but with the priorities as set forth herein. The DIP Lender may, in its sole discretion, but shall not be required to, file a certified copy of this Final Order in any filing or recording office in any county or other jurisdiction in which the Debtor has property.

16. Notwithstanding the occurrence of an Event of Default under the DIP Loan Documents or anything herein, all of the rights, remedies, benefits and protections provided to the DIP Lender under this Final Order and the DIP Loan Documents shall survive the termination of any obligation of the DIP Lender to make loans and advances under the DIP Loan Documents.

17. The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtor, and their respective successors and assigns. This Final Order shall bind any trustee or other responsible person or officer hereafter appointed or elected for the estate of the Debtor, whether in this Chapter 11 case or in the event of the conversion of the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Final Order.

4890-3193-1989, v. 1

18. The provisions of this Final Order shall also be binding upon all creditors of the Debtor and other parties in interest. No third parties are intended to be or shall be deemed to be third party beneficiaries of this Final Order or the DIP Loan Documents.

19. No failure or delay on the part of the DIP Lender in exercising any right, power or privilege provided for in this Final Order or in the DIP Loan Documents shall operate as a waiver thereof. This Final Order shall not be deemed or construed in any way as a waiver or relinquishment of any rights the DIP Lender may have to bring or be heard on any matter brought before this Court.

20. Without limiting the rights of access and information afforded the DIP Lender under the DIP Loan Documents, the Debtor shall permit representatives, agents and/or employees of the DIP Lender to have reasonable access to the Debtor's premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtor's business) and shall cooperate, consult with and provide to such persons all such non-privileged information as they may reasonably request.

21. The Debtor shall not, without the DIP Lender's prior written consent (which shall be given or refused in its sole discretion), seek to modify, vacate or amend this Final Order or any DIP Loan Documents. If any or all of the provisions of this Final Order or the DIP Loan Documents are hereafter modified, vacated, amended or stayed by subsequent order of this Court or any other court, such modification, vacatur, amendment or stay shall not affect the validity of any obligation to the DIP Lender that is or was incurred prior to the effective date of such modification, vacatur, amendment or stay, or the validity and enforceability of any security interest, lien or priority authorized or created by this Final Order or the DIP Loan Documents and, notwithstanding any such modification, vacatur, amendment or stay, any obligations of the Debtor

4890-3193-1989, v. 1

pursuant to this Final Order or the DIP Loan Documents arising prior to the effective date of such modification, vacatur, amendment or stay shall be governed in all respects by the original provisions of this Final Order and the DIP Loan Documents, and the validity of any such credit extended or security interest or lien granted pursuant to this Final Order or the DIP Loan Documents is subject to the protection accorded the DIP Lender under Section 364(e) of the Bankruptcy Code.

22. If this Chapter 11 case is dismissed, converted, otherwise superseded or substantively consolidated, the DIP Lender's rights and remedies under this Final Order and the DIP Loan Documents shall be and remain in full force and effect as if this Chapter 11 case had not been dismissed, converted, superseded or substantively consolidated. Furthermore, notwithstanding any such dismissal, conversion, or substantive consolidation, all of the terms and conditions of this Final Order, including, without limitation, the liens and the priorities granted hereunder, shall remain in full force and effect.

23. The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtor to obtain credit on the terms and conditions upon which the Debtor and the DIP Lender have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under Section 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in Section 364(e) of the Bankruptcy Code.

24. This Final Order shall be fully effective immediately upon entry on the docket for this case.

25. To the extent any provisions in this Final Order conflict with any provisions of the Motion, or any DIP Loan Document, the provisions of this Final Order shall control.

26.     Counsel for the Debtor is directed to serve a copy of this Final Order as provided below and on all parties served with the Motion (including the twenty (20) largest unsecured creditors of the Debtor, who shall be served by facsimile or electronic mail transmission) within three (3) days after the entry of this Final Order and thereafter to file a certificate of service with the Court.

27.     The Debtor shall provide parties in interest with a renewed budget no later than three (3) days prior to the end of the current Budget.

*Attorney Edward J. Peterson is directed to serve a copy of this order on interested parties who do not receive CM/ECF service and file a proof of service within 3 days of entry of the order.*

4890-3193-1989, v. 1

| **Week Seven Projections (03.06-03.12)** | | **Week Eight Projections (03.13-03.19)** | | **Week Nine Projections (03.20-03.26)** | | **Week Ten Projections (03.27-04.02)** | |
|---|---|---|---|---|---|---|---|
| Financial Statements in U.S. Dollars | | Financial Statements in U.S. Dollars | | Financial Statements in U.S. Dollars | | Financial Statements in U.S. Dollars | |
| **Revenue** | Budget | **Revenue** | Budget | **Revenue** | Budget | **Revenue** | Budget |
| Gross Sales | $160,000.00 | Gross Sales | $160,000.00 | Gross Sales | $160,000.00 | Gross Sales | $160,000.00 |
| Less: Sales Returns and Allowances | | Less: Sales Returns and Allowances | | Less: Sales Returns and Allowances | | Less: Sales Returns and Allowances | |
| **Net Sales** | | **Net Sales** | | **Net Sales** | | **Net Sales** | |
| **Expenses** | | **Expenses** | | **Expenses** | | **Expenses** | |
| Sales Tax | $ 6,609.00 | Sales Tax | $ 6,619.00 | Sales Tax | $ 6,619.00 | Sales Tax | $ 6,619.00 |
| COG- Fintech | $ 5,720.00 | COG- Fintech | $ 8,220.00 | COG- Fintech | $ 5,720.00 | COG- Fintech | $ 8,220.00 |
| Sysco | $ 7,800.00 | Sysco | $ 7,800.00 | Sysco | $ 7,800.00 | Sysco | $ 7,800.00 |
| Kitchens Sales Receipts | $ 48,142.00 | Kitchens Sales Receipts | $ 48,142.00 | Kitchens Sales Receipts | $ 48,142.00 | Kitchens Sales Receipts | $ 48,142.00 |
| Payroll Direct Deposit | $ 57,000.00 | Payroll Direct Deposit | | Payroll Direct Deposit | $ 57,000.00 | Payroll Direct Deposit | |
| Employer Taxes & Payroll Checks | $ 20,400.00 | Employer Taxes & Payroll Checks | | Employer Taxes & Payroll Checks | $ 20,400.00 | Employer Taxes & Payroll Checks | |
| Cintas | | Cintas | | Cintas | $ 7,000.00 | Cintas | |
| Rent | | Rent | | Rent | | Rent | $ 51,000.00 |
| Cleaning | $ 1,841.00 | Cleaning | $ 1,841.00 | Cleaning | $ 1,841.00 | Cleaning | $ 1,841.00 |
| Bartender Credit Card Tips | $ 6,000.00 | Bartender Credit Card Tips | $ 6,000.00 | Bartender Credit Card Tips | $ 6,000.00 | Bartender Credit Card Tips | $ 6,000.00 |
| Insurance | | Insurance | | Insurance | | Insurance | $ 4,300.00 |
| Utilites | | Utilites | $ 9,000.00 | Utilites | | Utilites | |
| Cable Internet Phone | | Cable Internet Phone | $ 612.00 | Cable Internet Phone | $ 889.00 | Cable Internet Phone | $ 3,000.00 |
| Sub V Trustee Fees | | Sub V Trustee Fees | | Sub V Trustee Fees | $ 1,000.00 | Sub V Trustee Fees | $ 1,000.00 |
| SBA Intrest | | SBA Intrest | $ 25,000.00 | SBA Intrest | | SBA Intrest | |
| Professional Fees | | Professional Fees | | Professional Fees | | Professional Fees | |
| Storage | $ 263.95 | Storage | $ 1,500.00 | Storage | | Storage | |
| Bank Fees | | Bank Fees | | Bank Fees | | Bank Fees | $ 491.20 |
| Equipment lease | | Equipment lease | $ 2,622.00 | Equipment lease | $ 714.00 | Equipment lease | |
| DIP Account Funding | | DIP Account Funding | | DIP Account Funding | | DIP Account Funding | |
| Repairs | | Repairs | | Repairs | | Repairs | |
| **Total Expenses** | $153,775.95 | **Total Expenses** | $117,356.00 | **Total Expenses** | $163,125.00 | **Total Expenses** | $138,413.20 |
| **Net Operating Income** | $ 6,224.05 | **Net Operating Income** | $ 42,644.00 | **Net Operating Income** | $ (3,125.00) | **Net Operating Income** | $ 21,586.80 |

Exhibit "A"